## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE CHEMOURS COMPANY FC, LLC,
a Delaware corporation,

       Plaintiff,

       v.

NATIONAL VACUUM ENVIRONMENTAL
SERVICES CORPORATION,
a New York corporation, and ZURICH
AMERICAN INSURANCE COMPANY,
a New York corporation,

       Defendants.

C.A. No. 22-1358-MAK

**JURY TRIAL DEMANDED**

## RE-NOTICE OF RULE 30(b)(6) DEPOSITION OF CORPORATE REPRESENTATIVE OF NATIONAL VACUUM ENVIRONMENTAL SERVICES CORPORATION

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), The Chemours Company FC, LLC ("Chemours" or "Plaintiff") hereby notices the deposition of National Vacuum Environmental Services Corporation ("National Vacuum") as an organization on the topics detailed below in Schedule A. You must designate one or more officers, directors, managing agents, or other persons who will testify on your behalf regarding these topics which are known or reasonably available to National Vacuum. The testimony of your designated witness(es) will be taken before a Notary Public or other officer authorized by law to administer an oath and will be recorded by video and stenographic means. Chemours may seek to use the testimony and the videotape at the time of trial. National Vacuum shall identify the person or persons who are most knowledgeable about each topic and who will speak on National Vacuum's behalf at least ten (10) days before the date of the deposition(s). The taking of this deposition may be adjourned

from day to day until completed, unless an agreement is reached among the parties regarding scheduling. The taking of this deposition will take place on May 4th, 2023 at 9:30 a.m.

THE CHEMOURS COMPANY FC, LLC

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: _/s/ Jesse L. Noa_

Niall A. Paul
(Admitted *Pro Hac Vice*)
Clifford F. Kinney, Jr.
(Admitted *Pro Hac Vice*)
Wesley A. Shumway
(Admitted *Pro Hac Vice*)
SPILMAN THOMAS
   & BATTLE, PLLC
300 Kanawha Boulevard, East
Post Office Box 273
Charleston, WV  25321-0273
(304) 340-3800
npaul@spilmanlaw.com
ckinney@spilmanlaw.com
wshumway@spilmanlaw.com

Jesse L. Noa (#5973)
Carla M. Jones (#6046)
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000
jnoa@potteranderson.com
cjones@potteranderson.com

*Attorneys for The Chemours Company FC, LLC*

Dated:  April 19, 2023

## SCHEDULE A

### Definitions

1.      Unless otherwise stated, the terms used herein shall have the meanings ascribed to them in the Amended Complaint.

2.      "You", "you", "Your", "your", and "National Vacuum" includes Defendant National Vacuum Environmental Services Corporation, and any of its subsidiaries, predecessors, parents, successors, affiliates, segments or divisions, domestic or foreign, whether doing business within or outside the United States. The term also refers to any present or former officers, directors, agents, and/or employees (including its attorneys, accountants and advisors) acting or purporting to act on its behalf.

3.      "Zurich" includes Defendant Zurich American Insurance Company, and any of its subsidiaries, predecessors, parents, successors, affiliates, segments or divisions, domestic or foreign, whether doing business within or outside the United States. The term also refers to any present or former officers, directors, agents, and/or employees (including its attorneys, accountants and advisors) acting or purporting to act on its behalf.

4.      "Chemours" shall mean and refer to Plaintiff The Chemours Company FC, LLC, and include its predecessors and successors in interest, and any and all of its and their past or present parents, subsidiaries, affiliates, affiliated entities, attorneys, partners, employees, agents, officers, directors, and representatives.

5.      "DuPont" shall mean and refer to E. I. du Pont de Nemours and Company and include its predecessors and successors in interest (including, but not limited to, DuPont de Nemours, Inc. and DowDuPont Inc.), and any and all of its and their past or present parents,

subsidiaries, affiliates, affiliated entities, attorneys, partners, employees, agents, officers, directors, and representatives.

6.      "Person", "Person(s)", "Persons", "person", "person(s)", and "persons" shall mean and include both natural persons and entities, including, without limitation, any minors, proprietorships, associations, governmental entities, partnerships, trusts, limited liability companies, corporations, government agencies, or any other entities without limitation.

7.      The "Bates lawsuit" shall mean and refer to a lawsuit filed by Leo J. Bates against The Chemours Company, The Chemours Company FC, LLC, and The Chemours Company, TT, LLC, in the Supreme Court of Niagara County, New York, Index No. E163842/2018.

8.      "Niagara" shall refer to DuPont's Niagara Falls facility in Niagara County, New York, which came under the control of Chemours in 2015.

9.       The "Agreement" shall refer to the Contract Order for Services entered into on or about June 1, 2008, between National Vacuum and E. I. du Pont de Nemours and Company ("DuPont"), and all subsequent amendments, assumptions and extensions thereto.

10.      The "Incident" shall refer to the incident/accident that occurred on June 9, 2017 at Niagara wherein Leo J. Bates sustained physical injuries as a result of a metal lid of a 55-gallon drum striking him in the face.

11.      The "Zurich Policy" shall refer to Zurich American Insurance Company Policy No. GLO 0381385-01, issued to National Vacuum. A copy of the Zurich Policy was attached to Defendant Zurich American Insurance Company's Answer to Amended Complaint for Damages with Affirmative Defenses. (D.I. 24-1).

## TOPICS

Please designate Person(s) to address the following topics:

1.      National Vacuum's negotiation, consideration and/or execution of the Agreement with DuPont in 2008. *See, e.g.,* ChemID000982-1085.

2.      National Vacuum's negotiation, consideration, and/or execution of all subsequent amendments, assumptions and extensions thereto of the Agreement from 2008 to June 9, 2017. *See, e.g.,* ChemID000001-24, 001086-1136.

3.      National Vacuum's agreement under the Agreement that National Vacuum would have the legal responsibility to carry and maintain a Commercial General Liability Policy for no less than $1,000,000.00 per occurrence. *See* ChemID000998, General Service Conditions, Sec. 32.

4.      National Vacuum's agreement under the Agreement that National Vacuum "shall name [Chemours] as an additional insured" to a commercial general liability policy. *See* ChemID000998, General Service Conditions, Sec. 32.

5.      National Vacuum's document retention policies.

6.      National Vacuum's agreement and/or adherence to all terms and conditions of the Agreement.

7.      National Vacuum seeking, negotiating, securing, and/or executing the Zurich Policy, including communications with Zurich and/or First Niagara Risk Management Inc. ("First Niagara") concerning the Zurich Policy.

8.      National Vacuum's performance of work under the Agreement from 2008 to June 9, 2017, including National Vacuum's work at Niagara.

9.      National Vacuum's agreement with DuPont and Chemours under the February 9, 2015 Agreement, *see* ChemID000023-24, to the following, relating to the Agreement (which is the only contract referenced on the attached schedule):

> In preparation, DuPont is implementing a new legal structure for the new company in the United States effective on February 1, 2015, DuPont needs to obtain for one or more of the legal entities that will hold Performance Chemicals assets (collectively, "Chemours"), contract rights substantially identical to the rights that DuPont has under certain contracts with you, listed on the attached schedule (the "Contracts").

> The items listed on the schedule below, including but not limited to contracts, master agreements, addenda, and other contractual agreements (collectively, "Contracts"), are among the contracts that DuPont needs to assign in connection with the new DuPont entity formation. As you know, these Contracts can be extended to Chemours under the Divested Business provision of the Contract(s) effective on or about July 1, 2015. DuPont prefers to assign them to The Chemours Company FC, LLC by February 1, 2015 in order to provide for a smoother transition. DuPont hereby requests your consent, as noted below, to the assignment by DuPont or its affiliates of all of their rights, title and interest in and to the Contracts to Chemours, to be effective on February 1, 2015 by execution of an Instrument of Assumption by Chemours substantially in the form attached hereto ("Instrument of Assumption"). DuPont hereby requests your agreement, as noted below, to a new contract(s) with The Chemours Company FC, LLC containing identical terms and conditions as the Contracts, except as otherwise described on the attached schedule (the "New Contracts") to be effective on February 1, 2015 and upon execution by you and Chemours, this Letter Agreement and the Contract(s) shall constitute the New Contract(s).

> The Contracts will remain in full force and effect, and DuPont and its affiliates will continue to be responsible for their performance under the Contracts. However, DuPont and its other non-Performance Chemicals affiliates will have no rights, obligations or interests in the New Contracts. All other arrangements and licenses between DuPont, DuPont affiliates, and your company will remain unchanged.

10.     National Vacuum's understanding that the February 9, 2015 Agreement (ChemID000023-24) is "the 'Assignment by Mirror' letter from 2015 when DuPont spun its Niagara Falls plant off to Chemours[,]" as Patrick Foote of National Vacuum explained to Gallagher Bassett on June 5, 2018. ZAIC215-16.

11.     National Vacuum's performance and/or work under the February 9, 2015 Agreement, including National Vacuum's work for Chemours at Niagara following execution of the February 9, 2015 Agreement.

12.     National Vacuum's hiring of employees to work at the Niagara and Yerkes sites in New York.

13.     National Vacuum's training of employees to work at the Niagara and Yerkes sites in New York.

14.     National Vacuum's consideration in 2017 of Chemours' inquiry regarding National Vacuum potentially handling the chunking of nitrided off-spec lithium drums at Niagara.

15.     Information, documents, communications, and/or request(s) for proposal from Chemours to National Vacuum regarding the chunking of nitrided off-spec lithium drums at Niagara, when Chemours and National Vacuum were discussing National Vacuum potentially handling the chunking of nitrided off-spec lithium drums at Niagara in 2017.

16.     National Vacuum's March 14, 2017 Quote No. NF 17-044 to Chemours, which states that "[National Vacuum] will provide a 3 man crew and PPE as needed for chunking lithium from drums[.]" *See* ChemID000025.

17.     National Vacuum's credentials, expertise, education, and/or experience concerning or related to the chunking of nitrided off-spec lithium drums.

18.     Chemours' training of National Vacuum personnel, employees, and/or Person(s) to go over the procedure for chunking of nitrided off-spec lithium drums at Niagara, including but not limited to March 31, 2017 training of Richard (Dustin) Keil, Douglas Waddington, Michael McCartney and Peter Brass. *See* ChemID000047; Chemours3 00090-135, 272; D.I. 25 at ¶ 23.

5

19.    National Vacuum's training of its employees concerning the chunking of nitrided off-spec lithium drums at Niagara, as required under Chemours Niagara Falls Plant Contractor Standards & Safety Procedures Manual, which provides: "The Contractor is responsible for assuring that their employees are trained in the work practices to safely perform their job including being cognizant of and in compliance with the Occupational Safety and Health Act (OSHA) Regulation 1910.119(h) regarding Process Safety Management. . . . Contractor's job supervisor shall ensure that safety training is carried out before personnel start work and continue throughout all phases of the work. Contractor shall inform each employee of his/her responsibility to work safely and prevent occupational injury. Documentation of all safety related training is required. The Contractor must maintain this documentation and provide to Chemours upon request." ChemID000051-53.

20.    National Vacuum's work for Chemours specifically regarding the chunking of nitrided off-spec lithium drums at Niagara in 2017.

21.    National Vacuum's internal procedures, training materials, and/or guidelines regarding the chunking of nitrided off-spec lithium drums at Niagara.

22.    National Vacuum's Job Safety Analysis concerning chunking of nitrided off-spec lithium drums at Niagara, *see, e.g.*, Chemours3 000428-459, and the Work and Flame Permits relating to National Vacuum's chunking of lithium nitride material at Niagara. *See, e.g.,* Chemours3 000381-404.

23.    National Vacuum's actions on June 9, 2017 relating to the Incident, including (a) National Vacuum's decision not to purge the drum of lithium nitride chunked material that injured Mr. Bates, ChemID000048-50, (b) National Vacuum's decision to take a lunch break, leaving the unpurged drum of lithium nitride chunked material unattended prior to the Incident, *see*

ChemID000349-360, and (c) National Vacuum's decision not to inform and/or warn Mr. Bates that the drum of lithium nitride chunked material that he was moving on June 9, 2017 was not purged.

24.     National Vacuum's process for determining which drums of lithium nitride chunked material to purge, including (a) National Vacuum's decision not to purge each drum of lithium nitride chunked material with nitrogen, ChemID000048-50, (b) National Vacuum's decision to only purge drums of lithium nitride chunked material that felt "hot," ChemID000048-50, and/or (c) any processes National Vacuum used to pick and choose which drums of lithium nitride chunked material to purge with nitrogen, and which not to purge.

25.     National Vacuum's (a) receipt, review, and/or consideration of Chemours' May 17, 2018 tender letter concerning the Incident and/or the Bates lawsuit, ChemID000085-256; (b) communications with Gallagher Bassett and/or Zurich concerning Chemours' May 17, 2018 tender, *see, e.g.,* ZAIC215-16; and (c) decision not to respond to Chemours' May 17, 2017 tender.

26.     National Vacuum's (a) receipt, review, and/or consideration of Chemours' October 15, 2019 correspondence concerning the Incident and/or the Bates lawsuit, s*ee* ChemID000262-270, National Vacuum's, (b) communications with Gallagher Bassett and/or Zurich concerning Chemours' October 15, 2019 correspondence, and (c) decision not to respond to Chemours' October 15, 2019 correspondence.

27.     National Vacuum's (a) receipt, review, and/or consideration of Chemours' January 5, 2022 correspondence to National Vacuum, *see* ChemID000372-88, (b) communications with Gallagher Bassett and/or Zurich concerning Chemours' January 5, 2022 correspondence, and (c) decisions not to respond to Chemours' January 5, 2022 correspondence.

28.    National Vacuum's (a) receipt, review, and/or consideration of Chemours' February 11, 2022 correspondence to National Vacuum, *see* ChemID000389-94, (b) National Vacuum's communications with Gallagher Bassett and/or Zurich concerning Chemours' February 11, 2022 correspondence, and (c) decision not to respond to Chemours' February 11, 2022 correspondence.

29.    From June 9, 2017 to present, National Vacuum's review, consideration, discussion, investigation, and/or deliberation concerning the Bates lawsuit and/or the Incident.

30.    Occupational Safety & Environmental Assoc., Inc.'s ("OSEA") investigation of the Incident in relation to OSEA's June 2017 report, including: (a) National Vacuum's hiring, payment, and/or communication with OSEA concerning the Incident, investigation, and/or OSEA's June 2017 report; (b) National Vacuum's participation in OSEA's investigation of the Incident; and (c) any communications between National Vacuum's communications with Zurich and/or Gallagher Bassett concerning the hiring and/or payment of OSEA in relation to OSEA's 2017 report concerning the Incident.

31.    National Vacuum's communications with Zurich or any other insurance carrier regarding the Incident and coverage for any claims arising from or relating to the Incident, including, but not limited to National Vacuum's indemnification obligations.

32.    National Vacuum's communications with the Occupational Safety and Health Administration ("OSHA") concerning the Incident, as well as National Vacuum's participation in any investigation conducted by OSHA concerning the Incident.

33.    The facts relating to National Vacuum's denial (D.I. 25) of Paragraph 24 of Chemours' Amended Complaint, which alleges that "National Vacuum was required to provide subsequent training to all employees who would perform the work." (D.I. 19.)

34.    The facts relating to National Vacuum's denial (D.I. 25) of Paragraph 28 of Chemours' Amended Complaint, which alleges that "National Vacuum did not follow Chemours' operating procedures, which clearly stated chunked material needed to be purged with nitrogen to minimize moisture build-up which could lead to a reaction." (D.I. 19.)

35.    The facts relating to National Vacuum's denial (D.I. 25) of Paragraph 29 of Chemours' Amended Complaint, wherein Chemours alleges that "Chemours spoke with National Vacuum's Job Lead to ask if the drum that exploded had been purged during the filling process per Chemours' written procedures.  The National Vacuum Job Lead stated the drum had not been purged because it 'did not feel hot;' and that National Vacuum employees had decided only to purge those drums that felt hot. . . ." (D.I. 19.)

36.    The facts relating to National Vacuum's denial of Paragraph 51 of Chemours' Amended Complaint, wherein Chemours alleges that "All conditions precedent to National Vacuum's liability under the Agreement have occurred."

37.    The facts relating to National Vacuum's denial of Paragraph 52 of Chemours' Amended Complaint, wherein Chemours alleges that "By failing to assume the defense of Chemours and hold Chemours harmless from claims asserted against it in the Bates lawsuit, National Vacuum breached its obligations under the Agreement, including the indemnity and defense provisions and its duty of good faith and fair dealing."

38.    The facts relating to National Vacuum's Affirmative Defenses (D.I. 25) to Chemours' Amended Complaint for Damages, including:

a.   National Vacuum's Third Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Answering Defendant denies that it owes any contractual obligations to Plaintiff."

b. National Vacuum's Fourth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Answering Defendant denies that it breached any contractual obligations to Plaintiff."

c. National Vacuum's Sixth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Answering Defendant has no obligation to defend or indemnify the Plaintiff in the [Bates lawsuit]."

d. National Vacuum's Seventh Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff failed to exhaust any applicable retentions, and/or other available and applicable insurance coverage."

e. National Vacuum's Eighth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff lacks standing to advance any claim for lack of privity."

f. National Vacuum's Ninth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum asserts defenses of laches, unclean hands, estoppel, waiver, and statute of limitations.

g. National Vacuum's Eleventh Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Any purported 'settlement' of the claims asserted against Plaintiff in the Bates lawsuit exclusively addresses liability of the defendants named in the Bates lawsuit and, as such, is not subject to any alleged indemnity obligation on the part of Answering Defendant. Further, to the extent Plaintiff cannot meet its burden to establish that such settlement was reasonable and non-collusive, no defense and/or indemnity obligation would exist on behalf of Answering Defendant."

h. National Vacuum's Twelfth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "The loss at issue in the *Bates* lawsuit, and any claims for damages in that lawsuit, inclusive of any settlement of such claims, is on account of The Chemours Company's, The Chemours Company FC, LLC's, and/or The Chemours Company, TT, LLC's own liability which includes, but is not limited to, their failure to have an acceptable written document and protocol describing how to perform the task of material re-packaging and filling of 55 gallon drums with 'chunked' elemental sodium and a lithium nitride mixture, and the other causal acts or omissions on their part as alleged by or on behalf of Leo Bates as a basis for his recovery in the *Bates* lawsuit."

i.   National Vacuum's Fourteenth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff has failed to allege the fulfillment of any requirement which would serve as a condition precedent to the alleged duty to defend or indemnify."

j.   National Vacuum's Fifteenth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff's claims must be diminished, reduced, offset, or barred in accordance with the terms of any and all settlements or releases by or in favor of the Plaintiff or with any other person or entity."

k.   National Vacuum's Sixteenth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "The damages sought to be recovered by Plaintiff may be barred, in whole or in part, to the extent that Plaintiff failed to mitigate, offset, minimize, or avoid any damages, or failed to preserve any rights of recovery against others who may have been responsible or otherwise liable in the underlying litigation."

l.   National Vacuum's Seventeenth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "The damages sought to be recovered by Plaintiff may be barred, in whole or in part, to the extent that it incurred duplicate, unreasonable, and inappropriate costs and expenses in connection with the defense or resolution of the underlying litigation."

m.   National Vacuum's Eighteenth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff's acts in connection with this claim may make it a volunteer at law."

n.   National Vacuum's Nineteenth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Upon information and belief, Plaintiff in this action is not the real party in interest and has already been indemnified for any sum which it claims it advanced by way of defense costs or settlement."

o.   National Vacuum's Twentieth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff's claims may be barred by the collateral source rule or similar law."

p.   National Vacuum's Twenty-First Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff's claims are barred by

applicable provisions of the Agreement and documents referenced in Plaintiff's Complaint."

q.  National Vacuum's Twenty-Second Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff was solely negligent proximately causing the underlying accident in: a) failing to have an acceptable written document and protocol describing how to perform the task of material re-packaging and filling a 55 gallon drum with 'Chunked elemental sodium and a lithium nitride mixture'; b) failing to provide proper procedural documentation in labeling of material to be re-packaged; and c) such other negligent conduct as may be revealed through discovery."

r.  National Vacuum's Twenty-Third Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff's conduct was the sole proximate cause of the underlying accident, thereby precluding any obligation of Answering Defendant to defend and/or indemnify Plaintiff."

s.  National Vacuum's Twenty-Fourth Affirmative Defense to Chemours' Amended Complaint (as numbered/labeled by National Vacuum prior to the Court striking numerous affirmative defenses (D.I. 38)), wherein National Vacuum states that "Plaintiff's claims may be barred by applicable workers' compensation exclusivity laws."

39.  National Vacuum's Responses to Chemours' First Set of Discovery Requests,

including:

a.  The facts supporting National Vacuum's response to Interrogatory No. 2, which asks that National Vacuum "Identify and describe in detail all information and/or documents related to the chunking of fused off-spec nitride contaminated lithium product drums in your possession prior to issuance of the June 2017 Accident Investigation Report by Occupational Safety & Environmental Assoc., Inc., to include safety data sheets, technical bulletins, instructions, guidelines, and/or warnings; the identity of the person and/or entities which supplied you with such information; and the date on which you received said information," and to which National Vacuum objected and responded "None presently known."

b.  The facts supporting National Vacuum's response to Interrogatory No. 3, which asks that National Vacuum "Identify and describe in detail all training and/or education provided by National Vacuum to each National Vacuum employee involved in the process of chunking of fused off-spec nitride contaminated lithium product drums at Niagara in 2017 (including but not limited to Leo J. Bates, Tony Alfieri, and Doug Waddington, and/or any other person(s) who were performing chunking work for National Vacuum at the Niagara site on the date of the Incident)," and to which National Vacuum only referenced "NVESC Job Safety Analysis (JSA)."

c. The facts supporting National Vacuum's response to Interrogatory No. 5, which asks that National Vacuum "Identify and describe in detail, National Vacuum's analysis of the hazards associated with the process of chunking of fused off-spec nitride contaminated lithium product drums, each person involved in the analysis, the date of the analysis, and the substance of the analysis," and to which National Vacuum only referenced "NVESC Job Safety Analysis (JSA)."

d. The facts supporting National Vacuum's response to Interrogatory No. 5, which asks that National Vacuum "Identify and describe in detail any and all training, education, and/or specialized knowledge or experience National Vacuum had relating to "chunking of fused off-spec nitride contaminated lithium product drums" prior to beginning such work at Niagara in 2017. See ChemID000026-46."

e. The facts supporting National Vacuum's denial, as stated, of Chemours' Request for Admission No. 4, which asks National Vacuum to "Admit that the parties agreed that National Vacuum would have the legal responsibility to carry and maintain a Commercial General Liability insurance policy for no less than $1,000,000.00 per occurrence. See ChemID000017 (Section 32 (Insurance), General Service Conditions)."

f. The facts supporting National Vacuum's denial, as stated, of Chemours' Request for Admission No. 5, which asks National Vacuum to "Admit that in the Agreement, the parties agreed that National Vacuum "shall name DuPont as an additional insured" to a commercial general liability policy. See ChemID000017 (Section 32 (Insurance), General Service Conditions)."

g. The facts supporting National Vacuum's denial of Chemours' Request for Admission No. 6, which asks National Vacuum to "Admit that in accordance with these contractual obligations, National Vacuum secured the Zurich Policy."

h. The facts supporting National Vacuum's denial, as stated, of Chemours' Request for Admission No. 7, which asks National Vacuum to "Admit that on February 9, 2015, National Vacuum and DuPont agreed to assign the Agreement to Chemours through the execution of an Instrument of Assumption by Chemours. See ChemID000023-24 (Letter Agreement for National Vacuum Corporation/Industrial Cleaning Services)."

i. The facts supporting National Vacuum's denial, as stated, of Chemours' Request for Admission No. 8, which asks National Vacuum to "Admit that the February 9, 2015 Instrument of Assumption assigned to Chemours all the terms and conditions of the Agreement between DuPont and National Vacuum. See ChemID000023-24."

j. The facts supporting National Vacuum's denial, as stated, of Chemours' Request for Admission No. 9, which asks National Vacuum to "Admit that per the Agreement, National Vacuum "warrants that the Services and Work shall (i) be free of defects in material and workmanship; (ii) meet the Scope of Work provided by [Chemours]; and (iii) be performed in a safe and workmanlike manner by trained, qualified, and efficient workers, in strict

conformity with best practice." ChemID000003 (Section 5 (Warranty), On and Off Site Services Addendum to General Service Conditions)."

k. The facts supporting National Vacuum's denial, as stated, of Chemours' Request for Admission No. 12, which asks National Vacuum to "Admit that the Agreement provides as follows: Each Party ("indemnitor") shall, to the extent permitted by law, indemnify, defend and hold safe and harmless the other Party from and against any and all claims, demands, complaints or actions by third parties (including employees of the Parties, their subcontractors under the Agreement, or government agencies) arising from or relating to the Agreement (including personal injury, death, property damage or damage to the environment), to the extent arising out of the negligence, willful misconduct, breach of the Agreement, breach of a related agreement, or violation of law by the indemnitor or any subcontractor of the indemnitor ("Fault or Negligence"). ChemID000017 (Section 30 (Third Party General Indemnity), General Service Conditions)."

l. The facts supporting National Vacuum's denial, as stated, of Chemours' Request for Admission No. 13, which asks National Vacuum to "Admit that the Agreement provides: Further, in the event the Parties are jointly at fault or negligent, they agree to indemnify each other in proportion to their relative Fault or Negligence. The claims, demands, complaints and actions covered hereunder include all settlements, losses, liabilities, judgments, court costs, reasonable attorneys' fees, fines, penalties and other litigation costs and expenses arising from or related to such claims, demands, complaints or actions. ChemID000017 (Section 30 (Third Party General Indemnity), General Service Conditions)."

m. The facts supporting National Vacuum's answer to Request for Admission No. 16, which asks National Vacuum to "Admit that Chemours' Chunking Nitrided Off-Spec Lithium Drums procedure LI2017A0 states, in pertinent part, "[a]ll chunked material must be drummed and placed on a nitrogen purge to manage hazardous conditions. Purging drums with the nitrogen gas minimizes moisture in the air from reacting with material. Once drums are purged, they can be sealed and stored properly." ChemID000031, 38.

n. The facts supporting National Vacuum's denial of Request for Admission No. 20, which asks National Vacuum to "Admit that in March 2017, Chemours personnel met with National Vacuum personnel to go over the procedure for chunking of fused off-spec nitrogen contaminated lithium product drums and provide hands-on training to four National Vacuum employees including Richard (Dustin) Keil, Douglas Waddington, Mike McCartney and Peter Brass. ChemID000047; D.I. 25 at ¶ 23.

o. The facts supporting National Vacuum's denial of Request for Admission No. 23, which asks National Vacuum to "Admit that the updated May 8, 2017 procedure was reviewed with Tom McInerney, National Vacuum Vice President of Operations, and Tony Dibesco, National Vacuum Project Manager. See ChemID000042-46."

p. The facts supporting National Vacuum's Answer to Request for Admission No. 34, which asks National Vacuum to "Admit that LI2017A0 is Chemours' written procedure for the

14

task of filling drums with chunked material, which Gary Hahn alleged Chemours did not have."

q.    The facts supporting National Vacuum's denial of Request for Admission No. 39, which asked National Vacuum to "Admit that Chemours spoke with National Vacuum's Job Lead to ask if the drum of chunked lithium nitride material that injured Leo J. Bates had been purged and the National Vacuum Job Lead stated the drum had not been purged because it "did not feel hot." ChemID000050."

r.    The facts supporting National Vacuum's objection in Request for Admission No. 40, wherein National Vacuum "objects to Plaintiff's request for admission no. 36 on the grounds that it assumes that NVESC was provided with document LI2017A0 or trained in its specific procedures."

s.    The facts supporting National Vacuum's denial of Request for Admission No. 44, which asked National Vacuum to "Admit that National Vacuum's acts or omissions, or the acts or omissions of individuals working on behalf of National Vacuum, in whole or in part caused the injuries sustained by Leo J. Bates."

t.    The facts supporting National Vacuum's denial of Request for Admission No. 45, which asked National Vacuum to "Admit that National Vacuum was negligent for not purging the drum of lithium nitride chunked material with nitrogen that was involved in the June 9, 2017 Incident."

u.    The facts supporting National Vacuum's denial of Request for Admission No. 61, which asked National Vacuum to "Admit that, pursuant to the Agreement, National Vacuum had a duty to indemnify Chemours with regard to the Incident."

v.    The facts supporting National Vacuum's denial of Request for Admission No. 62, which asked National Vacuum to "Admit that, pursuant to the Agreement, National Vacuum had a duty to defend and indemnify Chemours with regard to the Bates lawsuit[.]"

w.    The facts supporting National Vacuum's admission of Request for Admission No. 63, which asks National Vacuum to "Admit that National Vacuum intended Chemours to be an additional insured under the Zurich Policy."

x.    The facts supporting National Vacuum's admission, upon information and belief, of Request for Admission No. 64, which asked National Vacuum to "Admit that Chemours is an additional insured under the Zurich Policy."

y.    The facts supporting National Vacuum's admission, upon information and belief, of Request for Admission No. 65, which asks National Vacuum to "Admit that Chemours was an additional insured under the Zurich Policy at the time of the Incident."

z. The facts supporting National Vacuum's denial of Request for Admission No. 72, which asks National Vacuum to "Admit Chemours did have contractual privity with National Vacuum regarding the Agreement and all of its terms and obligations."