**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE CHEMOURS COMPANY FC, LLC | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 22-1358** |
| | : | |
| NATIONAL VACUUM | : | |
| ENVIRONMENTAL SERVICES | : | |
| CORPORATION, and ZURICH | : | |
| AMERICAN INSURANCE COMPANY | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                         **May 5, 2023**

E.I. du pont de Nemours and Company hired National Vacuum Environmental Services Corporation to provide industrial cleaning services. National Vacuum agreed to obtain general liability coverage as part of their service and add Dupont as an additional insured. National Vacuum bought general liability coverage from Zurich American Insurance Company. Dupont assigned its rights from its agreement with National Vacuum to its affiliate The Chemours Company including the right to be added as an additional insured on the Zurich insurance policy.

Chemours then hired National Vacuum to perform a new service of lithium chunking operations at one of its New York work sites. An explosion injured a National Vacuum employee at a Chemours's New York site. The employee sued Chemours for failing to provide a safe work site. Chemours sought defense and indemnification in the employee's lawsuit from National Vacuum and Zurich. National Vacuum and Zurich refused. Chemours now sues National Vacuum for breach of its industrial cleaning service agreement and Zurich for breach of its insurance contract. National Vacuum cross-claims against Zurich seeking indemnity from Chemours's breach of contract claim. Zurich moves to dismiss Chemours's contract claims and National Vacuum's indemnity cross-claim.  National Vacuum moves to dismiss Chemours's

contract claim against it. We find Chemours alleges breach of contract claims against National Vacuum and Zurich. But National Vacuum cannot proceed on a cross-claim against Zurich for contractual indemnity as a matter of law.

## I.     Alleged facts

Dupont hired National Vacuum to provide industrial cleaning services at Dupont's Niagara Falls and Yerkes facilities in New York State beginning in June 2008.[1] National Vacuum specializes in "confined space entry, industrial cleaning and environmental contract services[.]"[2] National Vacuum agreed to perform its work in a workmanlike manner.[3] Dupont and National Vacuum agreed to defend and indemnify each other for claims caused by the other party's negligence.[4]

National Vacuum also agreed to obtain a commercial general liability policy naming Dupont as an additional insured.[5] The parties agreed to extend the agreement through the end of 2017.[6] National Vacuum bought general liability coverage from Zurich American Insurance Company.[7] Zurich agreed to insure National Vacuum for damages National Vacuum paid because of bodily injury or property damage caused by its negligence subject to exclusions.[8]

Zurich and National Vacuum agreed third parties could be entitled to coverage under their insurance contract as "additional insureds."[9] They agreed additional insureds would include anyone National Vacuum agrees to add as additional insured in a written contract or agreement.[10] They agreed the additional insured would only be insured for bodily injury caused, in whole or in part, by National Vacuum's acts or omissions.[11] Zurich and National Vacuum also agreed additional insureds like Dupont could not transfer rights or obligations without Zurich's written consent.[12]

### *Chemours steps into Dupont's role with National Vacuum.*

Dupont separated its performance chemicals services into a separate legal entity known as Chemours in 2015.[13] Dupont and National Vacuum agreed to assign Dupont's rights in the industrial cleaning service agreement to Chemours.[14] Dupont and National Vacuum agreed a letter agreement would create a new contract after Chemours signed an attached "Instrument of Assumption."[15] They agreed the new contract would contain terms identical to the service agreement between National Vacuum and Dupont.[16] The assumption agreement grants Chemours the rights held by Dupont based on the terms and conditions of the service agreement including Dupont's status as an additional insured.[17]

### *Injured National Vacuum employee Leo J. Bates sues Chemours.*

Chemours produced lithium metal for two reactive metal companies at a facility in Niagara County, New York.[18] Its Niagara Falls facility accumulated excess lithium in drums over years of manufacturing.[19] Chemours needed to "chunk" the excess lithium into smaller pieces for disposal.[20] This process involves "removing the unrecoverable, fused lithium nitride from drums and then breaking down both the drum and pail material (chunking) for packaging in containers with the contents submerged in mineral oil and purged with Nitrogen gas."[21] National Vacuum worked for fifteen to twenty years at the Niagara Falls facility performing sodium chunking operations.[22] Chemours asked National Vacuum to perform these lithium chunking operations as well.[23] Chemours accepted National Vacuum's quote to perform the operations.[24] Chemours developed a written procedure for the operation and met with National Vacuum employees.[25] The procedure specified "all chunked material must be drummed and placed on a nitrogen purge to manage hazardous conditions."[26] Purging drums with nitrogen gas minimizes

moisture in the air from reacting with material.[27] The drums can be sealed and stored properly after they are purged.[28]

A chemical reaction caused the lid of a fifty-five gallon drum to fly off when National Vacuum employees moved it to a storage facility on June 9, 2017.[29] The lid struck National Vacuum employee Leo J. Bates causing him serious physical and emotional injuries.[30] Chemours asked National Vacuum's "job lead" if anyone purged the drum with nitrogen.[31] The job lead said no one did because the drum "did not feel hot" and National Vacuum employees decided to only purge hot drums.[32]

Mr. Bates sued Chemours and "their agents, servants and/or employees" for failing to create a safe work environment.[33] Mr. Bates swore a Chemours employee told him about the requirement to purge the drums before he started working and other National Vacuum employees would purge them.[34]

Chemours asked National Vacuum to indemnify and defend it in Mr. Bates lawsuit.[35] National Vacuum did not respond.[36] Zurich eventually denied coverage.[37] Chemours settled the claims of Mr. Bates for an undisclosed sum but continued to deny all liability for the incident leading to Mr. Bates's injury.[38] Chemours then demanded reimbursement from Zurich as an additional insured.[39] Zurich did not respond.[40]

## II.    Analysis

Chemours now sues National Vacuum for breach of its industrial service cleaning agreement and Zurich for breach of its insurance contract.[41] National Vacuum cross-claims against Zurich alleging Zurich should indemnify National Vacuum against Chemours's claims.[42]

Zurich moves for judgment on the pleadings on both Chemours's claim and National Vacuum's cross-claim.[43] Zurich seeks to dismiss Chemours's claim arguing National Vacuum

did not agree to add Chemours as an additional insured.[44] Zurich argues National Vacuum's acts or omissions did not cause Chemours's liability in Mr. Bates lawsuit.[45] Chemours responds National Vacuum agreed to add it as an additional insured through an assignment agreement.[46] Chemours argues National Vacuum caused Mr. Bates's lawsuit by negligently failing to purge the lithium drums.[47]

Zurich seeks to dismiss National Vacuum's cross-claim arguing it owes National Vacuum no duty to defend or indemnify because it did not agree to cover Chemours's breach of contract claims against National Vacuum.[48] Zurich argues its policy does not cover Chemours's claim arguing National Vacuum did not add it as an additional insured.[49] It argues Chemours's claim alleging National Vacuum did not defend and indemnify Chemours in Mr. Bates's lawsuit falls under two exclusions in the insurance policy.[50] National Vacuum responds Chemours's breach of contract claim is based on National Vacuum's failure to add it as additional insured and Chemours incurred liability for bodily injury caused by National Vacuum.[51] National Vacuum argues Zurich agreed to cover this type of claim.[52]

National Vacuum also moves for judgment on the pleadings seeking to dismiss Chemours's breach of contract claim against it.[53] National Vacuum argues it did not agree to add Chemours as an additional insured.[54] National Vacuum further argues Mr. Bates only alleges wrongdoing against Chemours and it owes no duty to indemnify Chemours.[55] Chemours counters National Vacuum agreed to add Chemours as an additional insured.[56] Chemours argues National Vacuum separately agreed to defend and indemnify Chemours in the Bates lawsuit.[57]

We begin with Chemours's claims. Chemours pleads a breach of contract claims against Zurich as an additional insured. Chemours pleads a breach of the industrial service cleaning

agreement. We then turn to National Vacuum's cross-claim for indemnity from Zurich.  National Vacuum does not state a claim for indemnity from Zurich.

### A. Chemours pleads breach of contract claims against Zurich and National Vacuum.

Chemours sues Zurich and National Vacuum for breach of contract.[58] Zurich and National Vacuum both move for judgment on the pleadings seeking to dismiss Chemours's breach of contract claims.[59] We find Chemours plead breach of contract claims against Zurich and National Vacuum.

### 1. Chemours pleads a breach of contract claim against Zurich.

Chemours sues Zurich for breach of contract alleging Zurich failed to defend and indemnify Chemours in Mr. Bates's lawsuit.[60] Zurich moves for judgment on the pleadings arguing National Vacuum did not agree to add Chemours as an additional insured.[61] Zurich argues it does not owe a duty to defend and indemnify Chemours even if we find Chemours is an additional insured because National Vacuum did not cause Mr. Bates's injury.[62]

### a. Zurich agreed New York law governs our review of its insurance policy.

We begin by determining the state law governing Zurich's insurance policy. National Vacuum and Dupont (and by assignment Chemours) agreed to apply Delaware law to the industrial cleaning service agreement.[63] The industrial cleaning service agreement between National Vacuum and Dupont (and allegedly assigned to Chemours) defines Delaware as the governing law. The Zurich Policy is silent on the issue.[64]

We apply the conflict of laws rules of Delaware as the forum.[65] We apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws Section 188 when the contract is silent on the choice of law issue.[66] We consider "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation

and place of business of the parties."[67] The Restatement posits we should apply the laws "of the state which the parties understood was to be the principal location of insured risk during the term of the policy" when considering insurance contracts specifically.[68]

Chemours is a Delaware limited liability company.[69] Zurich and National Vacuum are both New York corporations.[70] National Vacuum and Dupont agreed to add Dupont as an additional insured in a contract covering facilities exclusively in New York.[71] The Zurich policy, to the extent it covers Chemours, only applies to its operations at its Niagara Falls facility.

We are persuaded by Judge Bartle's reasoning in *Safeway Inc. v. Liberty Mutual Insurance Company*.[72] Judge Bartle considered an insurance contract where a Massachusetts insurer agreed to insure a Pennsylvania corporation as the named insured.[73] Judge Bartle applied Delaware law because the named insured regularly conducted business in Delaware and the additional insured operated as a Delaware corporation.[74] Judge Bartle reasoned the insurer understood it insured risks in Delaware.[75]

We agree with Judge Bartle's reasoning. National Vacuum is a New York company. Chemours is a Delaware company. But Zurich's coverage is for work performed at a site in Niagara Falls, New York. Zurich understood it insured risks in New York. We apply the laws of New York to issues related to the Chemours's rights as an alleged additional insured under the Zurich policy. We also apply New York law to issues related to National Vacuum's rights under the Zurich policy because both National Vacuum and Zurich are New York entities.

### b.  Chemours alleges it is an additional insured on the Zurich policy.

Chemours alleges Zurich breached the insurance policy as it is an additional insured on the Zurich policy because Dupont assigned its coverage to Chemours in a letter agreement between Dupont and National Vacuum.[76] Zurich agreed its definition of "additional insureds"

includes an organization National Vacuum agreed to add as an additional insured in a written contract.[77] Zurich disputes Chemours has a written agreement with National Vacuum which would require National Vacuum to add Chemours as an additional insured on the Zurich policy.[78]

We "give unambiguous terms their plain and ordinary meaning" when considering insurance contracts under New York law.[79] We may not "add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements[.]"[80]

Zurich argues the letter agreement between Dupont and National Vacuum is not an assignment agreement but rather an agreement to create a new contract between National Vacuum and Chemours.[81] Zurich argues this agreement does not include a requirement to add Chemours as an additional insured because the new agreement contains the identical terms and conditions as the industrial cleaning service agreement between National Vacuum and Dupont.[82] Zurich argues the new agreement only includes a requirement to name Dupont as an additional insured because National Vacuum only agreed to add Dupont in the original agreement.[83]

Zurich argues Dupont agreed to extend its industrial cleaning service contract with National Vacuum in 2018.[84] Zurich argues Chemours relies on this extension to show its agreement with National Vacuum extended beyond Mr. Bates's accident in 2017.[85] Zurich argues the extension shows National Vacuum never agreed to add Chemours as an additional insured because only National Vacuum and Dupont agreed to the extension.[86] Chemours counters it did not rely on this extension and we should not consider it.[87] We agree with Chemours at this early stage.

Zurich misstates the document Chemours relies upon in its amended Complaint. Zurich directs us to an agreement executed on January 8, 2018 in which Dupont and National Vacuum agree to extend the industrial cleaning service agreement to December 31, 2018.[88] Chemours references no specific extensions in its Complaint but does allege Dupont and National Vacuum extended their agreement through December 31, 2017.[89] This does not appear to be the document Chemours is referencing. Zurich also attaches Chemours's May 17, 2018 Tender to National Vacuum.[90] This attachment contains an extension signed October 21, 2014 between National Vacuum and Dupont extending their industrial cleaning service agreement through December 31, 2017.[91] The 2018 extension is not referenced or implicated in Chemours's pleadings. We cannot consider the 2018 extension on a Motion for judgment on the pleadings.[92]

Zurich also argues there is an "instrument of assumption" referenced in the letter agreement but not attached.[93] We agree the letter agreement between National Vacuum and Dupont references an attached instrument of assumption.[94] Chemours alleges it signed the instrument of assumption.[95] It alleges National Vacuum and Dupont assigned the rights from Dupont to Chemours.[96] Zurich argues the instrument of assumption does not exist.[97] Whether Dupont and National Vacuum assigned the rights to Chemours necessarily depends on the instrument of assumption.[98]

The existence of the instrument of assumption and its execution are fact questions in dispute. We must make all reasonable inferences in favor of non-movant Chemours. Chemours alleges it signed the instrument of assumption confirming National Vacuum and Dupont agreed to assign Dupont's right to be added as an additional insured to Chemours. We find Chemours alleges it is an additional insured on the Zurich policy.

### c.   The anti-assignment provision in the Zurich Policy does not apply.

Zurich argues its policy bars Dupont from assigning coverage without Zurich's consent even if there is a written agreement. We find the cited anti-assignment language does not bar Dupont from assigning its rights as an additional insured to Chemours.

New York law generally holds anti-assignment clauses as valid if the assignment occurs before the insured-against loss.[99] We will not enforce the clause if the assignment occurs after the covered loss.[100]

Chemours agrees Dupont's assignment of its rights occurred before Mr. Bates's injury.[101] But Zurich did not explicitly agree to add Dupont as an additional insured. Zurich agreed to add any organization National Vacuum agrees to add as an additional insured in a written agreement.[102] Judge Locke considered nearly identical additional insurance language in *Holbrook Realty, LLC v. Peerless Insurance Company* where the insurer agreed to add "any" organization the named insured agreed to add as an additional insured in a written contract.[103] The named insured agreed to add its landlord as an additional insured in a lease agreement.[104] The landlord then transferred the lease to another company.[105] Judge Locke first found the insurer owed a duty to insure the landlord-assignee because the assignment created the necessary written agreement.[106] Judge Locke then turned to the insurer's argument insureds on the policy could not transfer their insurance rights without the insurer's consent.[107] Judge Locke rejected this argument because the insurer did not explicitly add the additional insured.[108] The insurer agreed to provide coverage automatically when the named insured agrees to add a landlord as an additional insured.[109] Judge Locke found the insurer did not require the named insured to obtain an additional rider substituting the original landlord with the new landlord.[110] Judge Locke reasoned the same logic applied to the question of whether the assignment transferred insurance

rights.[111] Judge Locke found it did not.[112] Judge Locke found the parties transferred the lease and the insurer continued to provide the same coverage to the named insured and its landlords.[113]

Zurich agreed to automatically add any organizations National Vacuum agreed to add as additional insured in a written agreement. Chemours alleges Dupont agreed to assign the right to be added as an additional insured. We agree with Judge Locke's reasoning. This assignment does not violate the anti-assignment clause.

### d. Chemours alleges acts or omissions on the part of National Vacuum which could give rise to Zurich's duty to defend.

Zurich argues Chemours does not qualify as an additional insured even if National Vacuum agreed to add Chemours as an additional insured because Chemours has not alleged National Vacuum caused Mr. Bates's injury. We find Chemours alleges Zurich had a duty to defend it in Mr. Bates's lawsuit because National Vacuum's negligence caused Mr. Bates's injury.

The duty to defend under governing New York law is "exceedingly broad, which is in the interest of the insured."[114] The duty can arise in two different ways. The first is when the "four corners of the complaint suggest . . . a reasonable possibility of coverage."[115] The second is when "the insurer has actual knowledge of facts establishing . . . a reasonable possibility of coverage."[116] We look to the New York Court of Appeals in *Fitzpatrick v. American Honda Motor Company, Inc.* explaining the "insurer's duty to defend is at least broad enough to apply when the 'four corners of the complaint' suggest the reasonable possibility of coverage."[117] But the appellate court emphasized the duty is at least as broad as to apply then and the rule does not mean "the complaint allegations are the *sole* criteria for measuring the scope of that duty."[118] Restricting the duty to defend analysis only to the underlying complaint "where the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the

lawsuit involves a covered event . . . would render the duty to defend narrower than the duty to indemnify–clearly an unacceptable result."[119] New York law instructs "the insurer must provide a defense if it has knowledge of facts which potentially bring a claim within the policy's indemnity coverage."[120]

Zurich directs us to the New York Court of Appeals' analysis in *Burlington Insurance Company v. NYC Transit Authority et al.* reviewing a similar insurance policy where the insurer agreed to add the New York City Transit Authority, the MTA New York City Transit and New York City as additional insureds but only for bodily injury caused in whole or in part by acts or omissions of its named insured, Breaking Solutions.[121] An explosion of a Breaking Solutions machine injured a transit authority employee.[122] The transit authority's failure to deenergize a cable caused the explosion.[123] The employee sued Breaking Solutions and New York City.[124] New York City impleaded the transit authority and MTA and asserted third party claims for indemnification based on a lease agreement.[125] The transit authority requested coverage from Breaking Solutions's insurer as an additional insured.[126] The insurer and transit authority disputed whether the transit authority should be considered an additional insured under the policy.[127] They specifically disputed the meaning of the language "caused in whole or in part."[128] The transit authority argued the court should interpret the language to require Breaking Solutions be only the "but-for" cause of the accident.[129] The transit authority argued Breaking Solutions's use of the machine but-for caused the accident even if Breaking Solutions did not negligently operate it.[130] The insurer argued the language required proximate cause and the transit authority's negligence alone caused the accident.[131] The court of appeals agreed with the insurer.[132] The court found the language requires the named insured's actions be the proximate cause of the injury.[133]

Zurich argues its named insured National Vacuum's status as Mr. Bates's employer is insufficient to create a possibility National Vacuum's act proximately caused the injury.[134] Zurich directs us to several cases considering similar additional insured policy language where the named insured's employee sustained an injury on an additional insured's premises. In *Ohio Security Insurance Company v. Travelers Indemnity Company of Connecticut*, the named insured's employee tripped on a piece of plywood.[135] In *Hanover Insurance Company v. Philadelphia Indemnity Insurance Company*, the named insured's employee slipped on a recently mopped floor.[136] In *Pioneer Central School District v. Preferred Mutual Insurance Company*, the named insured's employee slipped on snow or ice in a parking lot.[137] But none of the three cited cases involved allegations of negligence against the named insured. Chemours alleges National Vacuum's negligence caused Mr. Bates's injury because National Vacuum employees failed to purge the drum.[138]

We are persuaded by the appellate division of the New York Supreme Court's reasoning in *Old Republic General Insurance Corporation v. Consolidated Edison Company of New York Inc.*[139] Con Edison contracted with a construction company to oversee the installation of a gas main.[140] The construction company agreed to obtain insurance naming Con Edison as an additional insured.[141] The insurer agreed to provide coverage for bodily injury caused in whole or in part by Con Edison's acts or omissions.[142] An elevator accident injured two construction company employees.[143] The employees sued Con Edison.[144] Con Edison sought coverage from the insurer as an additional insured.[145] The insurer sued for declaratory judgment arguing the construction company did not cause the injuries and it had no duty to defend.[146] An employee swore the construction company knew the elevator malfunctioned and had deficiencies.[147] Con Edison argued testimony created a fact issue as to whether the construction company

13

proximately caused the accident.[148] The court agreed with Con Edison.[149] The court distinguished cases like *Burlington Insurance Company* where the parties agreed the named insured did not proximately cause the accident.[150] The construction company knew of the defect and did nothing.[151] The court found the construction company may have proximately caused the accident so the insurer owed a duty to defend.[152]

It is also not dispositive Mr. Bates did not sue National Vacuum. We are persuaded by the appellate division of the New York Supreme Court's reasoning in *All State Interior Demolition Inc. v. Scottsdale Insurance Company*.[153] An insurer argued it did not owe a duty to defend to an alleged additional insured because the injured party did not even name the named insured as a defendant.[154] The court found the failure to add the named insured as a defendant irrelevant where the injured party's complaint and the additional insured's third party complaint suggested the named insured's negligence caused the injury.[155] This is particularly true in these cases where, as Zurich acknowledges, the employee is barred by New York worker's compensation law from bringing an action directly against the employer.[156]

Chemours alleges testimony from Mr. Bates's lawsuit shows National Vacuum employees failed to purge the drums and caused the accident through their negligence.[157] Chemours sufficiently plead National Vacuum's negligence proximately caused the Bates lawsuit.

Zurich also argues it had no actual knowledge of the evidence until over a year after Chemours settled Mr. Bates's lawsuit even assuming there could be evidence creating a duty to defend.[158] It is unclear what knowledge, if any, Zurich had of these proceedings and the actions of National Vacuum's employees, but we construe facts in favor of non-movant Chemours.

Zurich may ultimately show it had no actual knowledge of facts which would give rise to a duty to defend. But those arguments are not suited for today's review.

Zurich also argues it has no duty to indemnify Chemours for damages paid to settle Mr. Bates's lawsuit. We acknowledge "[a]n insurer's obligation to furnish its insured with a defense is heavy and, of course, broader than its duty to pay."[159] But the duty to indemnify "is determined by the actual basis for the insured's liability to a third person[.]"[160] Zurich argues again it cannot be required to indemnify Chemours because Mr. Bates focuses on Chemours's liability as an owner of the property. We are again persuaded by the court's reasoning in *All State* as well as the reasoning of the court in *Old Republic General Insurance Corporation*. The insurance policy requires indemnification if National Vacuum's negligence proximately caused the incident. Indemnification is based on the facts adduced in Mr. Bates's lawsuit. We cannot determine the facts today on the pleadings.

### e.   Zurich did not waive ability to disclaim its duty to defend and indemnify.

Chemours argues Zurich waived its right to disclaim coverage by unreasonably delaying its response under Section 3420(d) of New York Insurance Law.[161] Zurich counters it did not need to timely deny coverage because this insurance law provision does not apply when the claim falls outside the scope of the policy's coverage portion. We find Zurich did not waive its ability to disclaim coverage to Chemours.

Zurich is arguing Chemours is not an additional insured and coverage is unavailable. Zurich is not arguing Chemours's claim falls under a policy exclusion. The New York Court of Appeals directs "[d]isclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion."[162]

Chemours argues Zurich is now disclaiming coverage based on two policy exclusions.[163] Chemours is mistaken. Zurich argues the policy exclusions apply to Chemours's breach of

contract claim against National Vacuum.[164] We agree. Zurich has not argued the exclusions bar coverage for Mr. Bates's claim against Chemours.[165]

We have no basis to today find Zurich waived its ability to argue it had no duty to defend and indemnify Chemours in Mr. Bates's lawsuit.

### 2. Chemours plead a breach of contract claim against National Vacuum.

Chemours sues National Vacuum for breach of contract alleging National Vacuum did not add Chemours as an additional insured and did not defend and indemnify Chemours in Mr. Bates's lawsuit.[166]

National Vacuum moves for judgment on the pleadings arguing it did not agree to add Chemours as an additional insured on the Zurich policy.[167] It also argues it fulfilled its duty to add Chemours as an additional insured if we find it agreed to add Chemours as an additional insured.[168] National Vacuum argues it did not agree to indemnify Chemours in Mr. Bates's lawsuit because Mr. Bates only alleges wrongdoing against Chemours and Delaware workers compensation law generally bars liability of employers like National Vacuum to third parties.[169]

National Vacuum references but does not substantively argue it did not have a duty to defend Chemours in Mr. Bates's lawsuit.[170] It only argues today it does not have a duty to indemnify Chemours for the settlement Chemours paid to Mr. Bates.

National Vacuum and Chemours agreed in the industrial cleaning service agreement we should apply Delaware law to disputes arising from the agreement.[171]

We have no basis today to find National Vacuum did not breach its contract obligations to add Chemours as an additional insured on the Zurich policy and defend and indemnify Chemours in Mr. Bates's lawsuit.

### a. Chemours alleges National Vacuum agreed to add it as an additional insured.

National Vacuum seeks to dismiss Chemours's breach of contract claim arguing it did not agree to add Chemours as an additional insured on the Zurich policy.[172] We above found a fact dispute whether Dupont assigned its rights in the industrial cleaning service agreement to Chemours through an instrument of assumption.[173] We must make all reasonable inferences in favor of the non-movant. Chemours sufficiently alleges National Vacuum agreed to assign Dupont's contractual rights to Chemours in a new agreement.

National Vacuum then argues it fulfilled its contractual obligation to add Chemours as an additional insured if we find it agreed to do so in the industrial cleaning service agreement.[174] It argues Zurich agreed to cover an organization as an additional insured if National Vacuum agreed in writing to add it as an additional insured.[175] National Vacuum argues it did not breach a contractual duty because Chemours would be added automatically as an additional insured on the Zurich policy if we find National Vacuum agreed to add Chemours as an additional insured.[176]

We acknowledge the logic of National Vacuum's argument. But the existence and nature of its obligation to Chemours under the industrial cleaning service agreement remain in dispute. We cannot opine on National Vacuum's obligations at this early stage. We already found Chemours plead National's Vacuum's had obligation to add Chemours as an additional insured on the Zurich policy and National Vacuum breached its obligation. Any further analysis into the merits of National Vacuum's argument would be inappropriate at this state in the proceedings.

### b. Chemours alleges National Vacuum agreed to indemnify Chemours against Mr. Bates's claim.

National Vacuum seeks to dismiss Chemours's breach of contract claim arguing it did not agree to indemnify Chemours against Mr. Bates's claim.[177] National Vacuum recognizes we allow a breach of contract claim for failure to indemnify against an employer if the employer

agrees to "(i) perform work in a workmanlike manner; **and** (ii) indemnify the third-party indemnitee for any claims arising from the employer-indemnitor's own negligence."[178] For example, in *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, Standard hired Precision Air to perform work on boilers in Standard's chemical plant.[179] Precision Air agreed to complete the work in a "workmanlike" manner.[180] Precision Air also agreed to indemnify Standard for any claims arising from Precision Air's acts or omissions.[181] A Precision Air employee fell through a roof at Standard's plant and sued Standard for negligently causing his injuries.[182] Standard sued Precision Air for contribution and indemnification.[183] The Delaware Supreme Court held Delaware's worker's compensation law precludes imposing joint tort liability to an employee against an employer which paid compensation benefits to an employee.[184] Standard could not maintain a contribution claim against the employer Precision Air because the substantive basis for the claim would be the employer's liability as a joint tortfeasor.[185] But the court held the indemnification claim could survive a motion to dismiss.[186] Precision Air agreed to i) perform its obligations in a "safe, good, substantial and workman-like manner and ii) indemnify Standard against any claims arising from Precision's acts or omissions.[187] The court reasoned these provisions created an independent duty based on contractual indemnification.[188] The court instructs the indemnification obligation is based in contract and Precision Air is required to indemnify Standard if either the employee's complaint or Standard's complaint allege Precision Air's negligence.[189] The court found both complaints put Precision' Air's negligence at issue and Precision Air had a contractual duty to indemnify Standard.[190]

National Vacuum argues the *Precision Air* exception does not apply today. It directs us to Judge Medinilla's analysis in *Wade v. Jessop's Tavern, Inc.* and Judge O'Hara's analysis in *Rock v. Delaware Elec. Co-op.*[191] In *Wade v. Jessop's Tavern, Inc.,* Jessop's Tavern hired a waste

collector to remove trash at Jessop's premises.[192] A concealed hole on Jessop property injured a waste collector employee.[193] The employee sued Jessop and Jessop joined the waste collector to indemnify Jessop for the waste collector's negligent training and/or supervision.[194] Judge Medinilla found the waste collector agreed to indemnify Jessop provided the occurrence did not involve Jessop's negligence.[195] Jessop argued the waste collector's negligence proximately caused the accident.[196] Judge Medinilla found the indemnity provision failed to consider a circumstance where both parties may have been negligent.[197] Judge Medinilla found Jessop's argument would improperly meld theories of contribution and indemnification.[198]

In *Rock*, a power line injured an employee of a contractor while the employee worked on a sewer main of the City of Wilmington.[199] The city sued the contractor for indemnification.[200] The contractor argued it did not agree to indemnify the city for the city's own negligence.[201] Judge O'Hara found none of the indemnification provisions referenced by the city provided a basis for relief for a claim predicated on the city's negligence.[202]

Unlike the parties in *Wade* and *Rock*, National Vacuum and Chemours considered a circumstance where both parties are negligent. National Vacuum agreed to indemnify Chemours to the extent National Vacuum is negligent even if Chemours is also negligent.[203] We agree National Vacuum agreed to indemnify Chemours only to the extent National Vacuum is at fault or negligent.[204] But National Vacuum is still required to indemnify Chemours when its employee accuses only Chemours of wrongdoing. In *Precision Air*, Precision Air's employee only sued Standard. But the Delaware Supreme Court held Precision Air's agreement to perform work in a workmanlike manner and indemnify Standard for Precision's negligence created an independent duty of indemnification. As in *Precision Air*, National Vacuum agreed to provide work in a

workmanlike manner and agreed to indemnify Chemours for National Vacuum's negligence. Its agreement creates an independent contractual duty of indemnification.

The Delaware Supreme Court in *Precision Air* instructs either Mr. Bates's complaint or Chemours's complaint can sufficiently allege National Vacuum's negligence. Chemours alleges National Vacuum negligently failed to purge the drums and caused Mr. Bates's injuries. Chemours sufficiently alleges National Vacuum had a duty to indemnify Chemours. Chemours sufficiently pleads a breach of contract claim against National Vacuum.

**B. We dismiss National Vacuum's cross-claim for contractual indemnity from Zurich.**

We next turn to whether National Vacuum can proceed on its cross-claim for contractual indemnity from Zurich. National Vacuum cross-claims against Zurich for contractual indemnification alleging Zurich must defend and indemnify National Vacuum in Chemours's present breach of contract claim. Zurich moves to dismiss National Vacuum's cross-claim arguing it did not agree to provide coverage for Chemours's breach of contract claim. It argues it did not agree to cover National Vacuum's failure to Chemours as an additional insured. It also argues National Vacuum's failure to defend and indemnify Chemours falls under an exclusion of the policy. We find National Vacuum fails to plead a cross-claim for contractual indemnification.

Zurich did not agree to cover National Vacuum for failing to add Chemours as an additional insured. Judge Bloom considered similar insurance language in *Western Heritage Insurance Company v. Jacobs Development Corporation* and found failure to obtain insurance is not an accident which would require an insurer to cover the claim.[205] Defendants in a personal injury suit sued a development company arguing it caused the injury and failed to obtain necessary insurance coverage.[206] The development company's insurer disclaimed coverage for the development company's alleged failure to obtain insurance coverage.[207] The insurer argued it only agreed to cover claims of bodily injury caused by an "accident".[208] Judge Bloom found

20

failure to obtain insurance coverage is not an "accident" as the term is commonly understood and the insurer owed no coverage for the claim.[209] Judge Bloom found general liability policies insure against faulty workmanship and not a contractor's failure to meet its contractual obligations.[210] Like the insurer in *Western Heritage*, Zurich agreed to cover claims of bodily injury caused by an accident.[211] It did not agree to cover National Vacuum's alleged failure to add Chemours as an additional insured on the Zurich policy.[212]

We find Zurich did not agree to cover National Vacuum for failing to defend and indemnify Chemours in Mr. Bates's lawsuit.

Zurich and National Vacuum agreed to several coverage exclusions. National Vacuum agreed the policy will not apply to damages from bodily injury or property damage National Vacuum is required to pay if it assumed liability in another agreement.[213] National Vacuum also agreed the policy will not apply to damages from bodily injury to one of National Vacuum's employees.[214] Zurich and National Vacuum agreed both exclusions are subject to an exception if the liability is assumed under an "insured contract."[215] Zurich and National Vacuum agreed an "insured contract" includes one in which National Vacuum agrees to assume the tort liability of another party to a third party.[216] They agreed tort liability would be a liability the law imposes without a contract or agreement.[217]

"[I]f the insurer is to be relieved of a duty to defend it is obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation."[218]  "In addition, exclusions are subject to strict construction and must be read narrowly[.]"[219]

We find Chemours's claim for indemnification falls under the exclusion for employer liability. It is undisputed Mr. Bates is National Vacuum's employee. National Vacuum agreed

the exclusion would apply to an obligation it had to repay a third party who must pay damages because of the employee's injury.[220]

The employer liability exclusion is subject to an exception for "insured contracts" which include contracts where the named insured assumes the tort liability of another party. The insured contract exception does not apply to Chemours's claim against National Vacuum. Assuming the liability of another party for the other party's own actions requires we be "firmly convinced that such an articulation reflects the intention of the parties."[221]

Parties can agree to an insured contract even if insured does not assume all the tort liability of the third party. In *CONMED Corporation v. Federal Insurance Company*, a named insured agreed to indemnify a third-party for damages except to the extent the third-party's negligent acts caused the damages.[222] Fifty-three individuals sued the named insured and third-party alleging several causes of action against the third-party including negligence and intentional torts.[223] The insurer argued the negligence claim relieved the named insured of an indemnity obligation and so the named insured did not assume the third-party's tort liability through the agreement.[224] Judge D'Agostino disagreed.[225] Judge D'Agostino found the named insured may have to indemnify the third-party for the third party's tort liability because of the intentional tort allegations.[226] Judge D'Agostino found the named insured and third party agreed to an "insured contract" because the named insured may be responsible for some of the third party's tort liability even if it is not responsible for all of it.[227]

But the insured must assume at least some of the third party's tort liability. Zurich directs us to *Stevanna Towing, Inc. v. Atlantic Specialty Insurance Company* where our Court of Appeals considered a similar "insured contract" exception.[228] A large boat bumped into a barge injuring a tow-boat operator's employee.[229] The employee sued the tow-boat operator and the

owners and operators of the other boat.[230] The tow-boat operator allegedly agreed to indemnify the owners and operators of the other boat for any injuries caused in whole or in part by the tow-boat operator's negligence.[231] Atlantic Specialty Insurance Company insured the tow-boat operator against claims of bodily injury and property damage.[232] The policy contained a provision where Atlantic excluded coverage for bodily injury to the insured's employee unless the insured assumed the liability in an "insured contract."[233] An insured contract included one in which the insured assumed the tort liability of another party.[234] The tow-boat operator sought coverage from Atlantic.[235] Our Court of Appeals found the indemnification agreement insufficient to create an insured contract.[236] The court held "[m]erely indemnifying [another party] for the [insured's] tortious conduct would not suffice" to trigger the exception.[237] The court held "insured contracts" must include an express term assuming liability for injuries caused by a third party and not those caused by the insured.[238]

Judge Haight refused to find an indemnity agreement between the named insured and a third-party to be an insured contract in *Mount Vernon Fire Insurance Company v. Kent Development of New York, Inc.*[239] Insured contracts included agreements where the named insured assumed the tort liability of another party.[240] The named insured agreed to hold the third-party "harmless and 'completely indemnify them' for any and all loss, liability or claim for bodily injury or death to any person or employee 'whether caused by negligence or otherwise on the part of [the named insured]'"[241] Judge Haight found the named insured only agreed to indemnify for expenses caused by the named insured.[242] Judge Haight found the agreement could not be an insured contract because the named insured did not agree to indemnify the third party for any acts caused by the third party.[243]

National Vacuum's promise to indemnify Chemours is limited. National Vacuum agreed to indemnify Chemours only to the extent National Vacuum is at fault or negligent.[244] National Vacuum may be required to reimburse Chemours for some or all the defense and settlement costs Chemours paid in Mr. Bates's lawsuit. But National Vacuum will only be required to reimburse Chemours in proportion to National Vacuum's negligence or fault. As in *Mount Vernon* and *Stevanna Towing*, National Vacuum only agreed to indemnify Chemours for National Vacuum's tortious conduct. This part of an agreement as to partial liability is not sufficient to qualify as an insured contract. We find National Vacuum has not plead a claim for contractual indemnification against Zurich.

### III.    Conclusion

Chemours plead a breach of contract claim against Zurich and National Vacuum. We deny Zurich's Motion for judgment on the pleadings with respect to Chemours's breach of contract claim. We deny National Vacuum's Motion for judgment on the pleadings with respect to Chemours's breach of contract claim. We grant Zurich's Motion for judgment on the pleadings dismissing National Vacuum's contractual indemnity claim.

---

[1] ECF Doc. No. 19 at ¶ 7; ECF Doc. No. 50–4.

[2] ECF Doc. No. 19 ¶ 16.

[3] The agreement provides:

> Supplier warrants that the Services and Work shall (i) be free of defects in material and workmanship; (ii) meet the Scope of Work provided by DuPont; and (iii) be performed in a safe and workmanlike manner by trained, qualified, and efficient workers, in strict conformity with best practice. ECF Doc. No. 50–4 at 4.

[4] The agreement provides:

> Each Party ('indemnitor') shall, to the extent permitted by law, indemnify, defend and hold safe and harmless the other Party from and against any and all claims, demands, complaints or actions by third parties (including employees of the Parties, their

subcontractors under the Agreement, or government agencies) arising from or relating to the Agreement (including personal injury, death, property damage or damage to the environment), to the extent arising out of the negligence, willful misconduct, breach of the Agreement, breach of a related agreement, or violation of law by the indemnitor or any subcontractor of the indemnitor ('Fault or Negligence'). Further, in the event the Parties are jointly at fault or negligent, they agree to Indemnify each other in proportion to their relative Fault or Negligence. The claims, demands, complaints and actions covered hereunder include all settlements, losses, liabilities, judgments, court costs, reasonable attorneys' fees, fines, penalties and other litigation costs and expenses arising from or related to such claims, demands, complaints or actions. *Id.* at 18.

[5] *Id*.

[6] ECF Doc. No. 19 ¶ 8.

[7] ECF Doc. No. 50–2.

[8] The policy provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. *Id.* at 83. *See infra* Part II.B (discussing exclusions).

[9] The policy provides:

Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.
However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

    2.   Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured. ECF Doc. No. 50–2 at 61.

[10] *Id.*

[11] *Id.*

[12] The policy provides:

> **F. Transfer of Your Rights and Duties Under This Policy**
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
>
> If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property. *Id.* at 17.

[13] ECF Doc. No. 50–5.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] ECF Doc. No. 19 ¶ 12.

[18] *Id.* at ¶ 14.

[19] *Id.* at ¶ 15.

[20] *Id.*

[21] *Id.* at ¶ 17.

[22] *Id.* at ¶ 16.

[23] *Id.*

[24] *Id.* at ¶ 21–22.

[25] *Id.* at ¶¶ 17, 23.

[26] *Id.* at ¶ 19.

[27] *Id.* at ¶ 18.

[28] *Id.*

[29] *Id.* at ¶ 26.

[30] *Id.* ¶¶ 26–27.

[31] *Id.* at ¶ 29.

[32] *Id.*

[33] ECF Doc. No. 50–3.

[34] ECF Doc. No. 19 ¶ 34.

[35] *Id.* at ¶ 31.

[36] *Id.* at ¶ 32.

[37] *Id.* at ¶ 33.

[38] *Id.* at ¶ 36.

[39] *Id.* at ¶ 41.

[40] *Id.* at ¶ 42.

[41] ECF Doc. No. 19. Chemours also alleged a bad faith claim against Zurich but later stipulated to a dismissal of the claim. ECF Doc. No. 55.

[42] ECF Doc. No. 25.

[43] ECF Doc. No. 48. A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). We analyze motions for judgment on the pleadings "under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). We "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 n.6 (3d Cir. 2022) (quoting *Wolfington*, 935 F.3d at 195). We may only grant a motion for judgment on the pleadings if "the movant clearly establishes" no "material issue of fact remains to be resolved" and the movant "is entitled to judgment as a matter of law." *Id.* (quoting *Wolfington*, 935 F.3d at 195). We may consider only "the complaint, exhibits attached to the complaint, matters of public record," and "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[44] ECF Doc. No. 49 at 11.

---

[45] *Id.* at 13.

[46] ECF Doc. No. 60 at 13.

[47] *Id.* at 21.

[48] ECF Doc. 49 at 19.

[49] ECF Doc. No. 91 at 7–8.

[50] ECF Doc. No. 49 at 19.

[51] ECF Doc. No. 67 at 15.

[52] *Id.* at 16.

[53] ECF Doc. No. 65.

[54] ECF Doc. No. 67 at 11-12.

[55] *Id.* at 12-14.

[56] ECF Doc. No. 88 at 12.

[57] *Id.* at 17–23.

[58] ECF Doc. No. 19.

[59] ECF Doc. No. 48; ECF Doc. No. 65.

[60] ECF Doc. No. 19 ¶¶ 55–59.

[61] ECF Doc. No. 49 at 11–13.

[62] *Id.* at 13–18.

[63] *See* ECF Doc. No 50–4 at 19 ("The Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware without giving effect to the principles of conflict of laws.").

[64] ECF Doc. No. 50–2.

[65] *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.").

[66] *Chesapeake Utilities Corp. v. Am. Home Assur. Co.*, 704 F. Supp. 551, 555 (D. Del. 1989).

---

[67] *Id.* at 556.

[68] Restatement (Second) of Conflict of Laws § 193 (1971).

[69] ECF Doc. No. 19 ¶ 4.

[70] *Id.* at ¶¶ 5–6.

[71] ECF Doc. No. 50–4 at 2.

[72] No. 08-460, 2009 WL 1209068 (D. Del. Apr. 30, 2009).

[73] *Id.* at *2.

[74] *Id.*

[75] *Id.*

[76] ECF Doc. No. 19 ¶ 12.

[77] ECF Doc. No. 50–2 at 61.

[78] ECF Doc. No. 49 at 12.

[79] *Teichman by Teichman v. Cmty. Hosp. of W. Suffolk,* 87 N.Y.2d 514, 520, 663 N.E.2d 628, 630 (1996).

[80] *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.,* 30 N.Y.3d 572, 581, 92 N.E.3d 743, 748 (2017).

[81] ECF Doc. No. 49 at 12.

[82] *Id.*

[83] *Id.*

[84] ECF Doc. No. 64 at 3–4.

[85] *Id.*

[86] *Id.*

[87] ECF Doc. No. 60 at 16.

[88] ECF Doc. No. 50–6.

[89] ECF Doc. No. 19 ¶ 8.

---

[90] ECF Doc. No. 50–8.

[91] *Id.* at 169.

[92] *See Mayer*, 605 F.3d at 230 (holding we must only consider documents if complainant's claims are based upon these documents).

[93] Zurich at times also refers to this as an "instrument of assignment". ECF Doc. No. 64 at 3.

[94] ECF Doc. No. 50–5 (requesting consent to the assignment of rights "by execution of an Instrument of Assumption by Chemours substantially in the form attached hereto[.]").

[95] ECF Doc. No. 19 ¶ 12.

[96] *Id.*

[97] ECF Doc. No. 64 at 3.

[98] ECF Doc. No. 50–5.

[99] *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006).

[100] *Id.* at 170–71.

[101] ECF Doc. No. 19 ¶¶ 12, 26.

[102] ECF Doc. No. 50–2 at 61.

[103] No. 18-1005, 2019 WL 4862073 at *3 (E.D.N.Y. Aug. 5, 2019), *report and recommendation adopted*, No. 18-1005, 2019 WL 4861888 (E.D.N.Y. Oct. 2, 2019).

[104] *Id.* at *2.

[105] *Id.*

[106] *Id.* at *8.

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Colon v. Aetna Life & Cas. Ins. Co.,* 66 N.Y.2d 6, 8, 484 N.E.2d 1040, 1041 (1985).

[115] *Cont'l Cas. Co. v. Rapid-Am. Corp.,* 80 N.Y.2d 640, 648, 609 N.E.2d 506, 509 (1993).

[116] *Id.*

[117] 78 N.Y.2d 61, 66, 575 N.E.2d 90, 92 (1991).

[118] *Id.*

[119] *Id.*

[120] *Id.*

[121] 29 N.Y.3d 313, 318, 79 N.E.3d 477, 479 (2017).

[122] *Id.*

[123] *Id.* at 319.

[124] *Id.* at 318.

[125] *Id.*

[126] *Id.* at 319.

[127] *Id.* at 320.

[128] *Id.*

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *Id.* at 324.

[133] *Id.*

[134] ECF Doc. No. 64 at 6–7.

[135] No. 19-1355, 2021 WL 797670 at *2 (S.D.N.Y. Mar. 1, 2021).

[136] 159 A.D.3d 587, 587, 73 N.Y.S.3d 549, 550 (2018).

[137] 165 A.D.3d 1646, 1646, 86 N.Y.S.3d 364, 366 (2018)

[138] ECF Doc. No. 19 ¶ 28.

[139] 193 A.D.3d 595, 146 N.Y.S.3d 620 (2021).

[140] *Id.* at 595.

[141] *Id.* at 596.

[142] *Id*

[143] *Id.*

[144] *Id.*

[145] *Id.*

[146] *Id.*

[147] *Id.*

[148] *Id.*

[149] *Id* at 597.

[150] *Id.*

[151] *Id.*

[152] *Id.*

[153] 168 A.D.3d 612, 92 N.Y.S.3d 256 (2019).

[154] *Id.* at 613.

[155] *Id.*

[156] *See Gonzales v. Armac Indus., Ltd.*, 81 N.Y.2d 1, 8, 611 N.E.2d 261, 264 (1993) ("The sole and exclusive remedy of an employee against his employer for injuries in the course of employment is compensation benefits[.]").

[157] ECF Doc. No. 19 ¶ 34–35.

[158] ECF Doc. No. 49 at 17.

[159] *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 326, 320 N.E.2d 619, 621 (1974).

[160] *Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 601 (S.D.N.Y. 2016).

[161] New York Insurance Law provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d)(2).

[162] *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188, 734 N.E.2d 745, 747 (2000).

[163] ECF Doc. No. 60 at 24.

[164] ECF Doc. No. 49 at 19.

[165] ECF Doc. No. 64 at 10.

[166] ECF Doc. No. 19 ¶¶ 44–54.

[167] ECF Doc. No. 67 at 11-12.

[168] ECF Doc. No. 95 at 2-3.

[169] ECF Doc. No. 67 at 12–14.

[170] *Id.*; ECF Doc. No. 95 at 4-6.

[171] ECF Doc. No. 50–4 at 19.

[172] ECF Doc. No. 67 at 11–12.

[173] *Supra* Part II.A.1.b. Chemours also submits National Vacuum's responses to Chemours' requests for admissions. Chemours argues these show National Vacuum admitted it intended Chemours to be an additional insured on the Zurich Policy. ECF Doc. No. 88 at 15-16; ECF Doc. No. 89 at 8. We will ignore this argument as we cannot consider evidence outside the pleadings.

[174] ECF Doc. No. 95 at 2–3.

[175] *Id.* at 3.

[176] *Id.* at 3–4. Zurich makes a similar argument in opposing National Vacuum's motion for judgment on the pleadings. ECF Doc. No. 91 at 12.

[177] ECF Doc. No. 67 at 12–14.

[178] *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, 654 A.2d 403, 407 (1995).

[179] *Id.* at 405.

[180] *Id.*

[181] *Id.*

[182] *Id.*

[183] *Id.* at 405–06.

[184] *Id.* at 406.

[185] *Id.* at 407.

[186] *Id.*

[187] *Id.* at 408

[188] *Id.*

[189] *Id.*

[190] *Id.* at 409.

[191] ECF Doc. No. 67 at 12–13.

[192] No. 4-107, 2016 WL 7158593 at *1 (Del. Super. Ct. Dec. 6, 2016).

[193] *Id.*

[194] *Id.*

[195] *Id.* at *2.

[196] *Id.*

[197] *Id.* at *3.

[198] *Id.*

[199] 328 A.2d 449, 452 (Del. Super. Ct. 1974).

[200] *Id.*

[201] *Id.*

[202] *Id.* at 456.

203 ECF Doc. No. 50-4 at 18 ("Further, in the event the Parties are jointly at fault or negligent, they agree to indemnify each other in proportion to their relative Fault or Negligence.").

204 *Id.*

205 No. 12-5718, 2014 WL 297792 at *8 (E.D.N.Y. Jan. 27, 2014).

206 *Id.* at *2.

207 *Id.*

208 The insurer agreed to cover claims of bodily injury caused by an "occurrence" which it defined as "an accident, including continuous or repeated exposure to substantially the same general harmful condition." *Id.* at *8.

209 *Id.*

210 *Id.* (citing *Transp. Ins. Co. v. AARK Const. Group, Ltd.*, 526 F.Supp.2d 350, 356–57 n. 3 (E.D.N.Y.2007)).

211 Zurich agreed to cover damages from bodily injury and property damage only if "The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory[.]'" ECF Doc. No. 50–2 at 83. It defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 54.

212 *W. Heritage Ins. Co.*, No. 12-5718, 2014 WL 297792 at *8 (E.D.N.Y. Jan. 27, 2014).

213 The policy provides:

>    2. Exclusions
>    This insurance does not apply to:
>    . . .
>    b. Contractual Liability
>    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>    (1) That the insured would have in the absence of the contract or agreement; or
>    (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative resolution proceeding in which damages to which this insurance applies are alleged. ECF Doc. No. 50-2 at 41.

[214] The policy provides:

2. Exclusions
. . .
This insurance does not apply to:
e. Employer's Liability
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract". *Id.*

[215] *Id.*

[216] The policy provides:

"Insured contract" means:
. . .
f.) That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with your work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage", or "personal and advertising injury" arising out of the offenses of false arrest, detention or imprisonment, to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. *Id.* at 73.

[217] *Id.*

[218] *Int'l Paper Co.* 35 N.Y.2d at 325.

[219] *Auto. Ins. Co. of Hartford v. Cook,* 7 N.Y.3d 131, 137, 850 N.E.2d 1152, 1156 (2006).

[220] ECF Doc. No. 50–2 at 41. ("This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.")

[221] *United States v. Seckinger*, 397 U.S. 203, 211 (1970).

[222] 590 F. Supp. 3d 463 (N.D.N.Y. 2022), *reconsideration denied*, No. 621-0083, 2022 WL 3027093 (N.D.N.Y. Aug. 1, 2022), and appeal withdrawn, No. 22-2018, 2022 WL 19003650 (2d Cir. Dec. 27, 2022).

[223] *Id.* at 468.

[224] *Id.*

[225] *Id.* at 470.

[226] *Id.* at 471.

[227] *Id.*

[228] No. 21-1420, 2022 WL 12241451 at (3d Cir. Oct. 21, 2022).

[229] *Id.* at *2.

[230] *Id.*

[231] *Id.*

[232] *Id.*

[233] *Id.*

[234] *Id.*

[235] *Id.*

[236] *Id.* at *6

[237] *Id.*

[238] *Id.*

[239] No. 93-3919, 1996 WL 521426 at *5 (S.D.N.Y. Sept. 12, 1996).

[240] *Id.* at *4.

[241] *Id.*

---

[242] *Id.* at *5.

[243] *Id.*

[244] ECF Doc. No. 50–4 at 18.